USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8 - 18 - 09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
FLIGHT SCIENCES, INC.,                :
                                      :
                    Plaintiff,        :     07 Civ. 2830 (VM)
                                      :
       - against -                    :     **DECISION AND ORDER**
                                      :
CATHAY PACIFIC AIRWAYS LIMITED,       :
                                      :
                    Defendant.        :
------------------------------------X

**VICTOR MARRERO, United States District Judge.**

Plaintiff Flight Sciences, Inc. ("FSI") brought this action against defendant Cathay Pacific Airways Limited ("CPAL") for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and misappropriation of trade secrets. CPAL now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"), alleging that FSI's claims are barred by the relevant statutes of limitations. For the reasons discussed below, CPAL's motion is DENIED.

## I. BACKGROUND[1]

On April 17, 1997, CPAL and FSI executed a Fuel Conservation Consulting Agreement (the "Agreement"), under

---

[1] The factual summary below is derived from FSI's complaint in this action, dated April 9, 2007 (the "Complaint"); Memorandum of Law in Support of Cathay Pacific Airways Limited's Motion for Summary Judgment, filed March 20, 2009 ("CPAL Mem."); Defendant's Statement of Undisputed Facts Pursuant to Local Rule 56.1, dated March 19, 2009 ("SMF"); Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, dated April 3, 2009 ("FSI Opp."); Plaintiff's Rule 56.1 Response and Statement of Facts, dated April 3, 2009 ("SMF Opp."); and Reply Memorandum of Law in Support of Cathay Pacific Airways Limited's Motion for Summary Judgment, dated April 9, 2009 ("CPAL Reply"). Except as quoted or otherwise cited, no other specific reference to these documents will be made.

which FSI was engaged to undertake an analysis of CPAL's operations and make fuel conservation recommendations to CPAL. Pursuant to the Agreement, CPAL paid FSI a retainer of $50,000 on June 13, 1997, and a second payment of $100,000 on September 10, 1997.  The Agreement also entitled FSI to additional payments from CPAL if CPAL's agreed-upon projected net cost savings arising out of FSI's fuel-conservation recommendations reached at least three percent of CPAL's fuel consumption in the first year after the project was completed. Finally, the Agreement stated that "[a]cceptance of the agreed upon cost savings shall not be unreasonably withheld." (Affidavit of Michael J. Holland, dated March 19, 2009, Ex. 4 ("Agreement") ¶ 6.4.)

As of March 5, 1998, FSI preliminarily valued the projected net cost savings arising out of its recommendations at $44,084,600 while CPAL valued the projected net cost savings at $3,486,400. On September 9, 1998, FSI provided to CPAL a 300-page book that contained twenty-nine fuel savings recommendations.[2]  As of July 7, 1999, FSI valued the projected net cost savings at $40,395,125, while CPAL valued the projected net cost savings at $7,893,368.

---

[2] FSI argues that the book was labeled an "interim report" and that FSI never characterized these recommendations as its final recommendations.

-2-

After September 9, 1998, FSI did not forward any other fuel cost savings recommendations books to CPAL, although FSI did stay in communication with CPAL about fuel savings strategies. Communications between FSI and CPAL continued for at least two more years.  FSI and CPAL were never able to agree upon the projected net cost savings attributable to FSI's recommendations produced pursuant to the Agreement.

In May 2006, FSI discovered that CPAL implemented several of FSI's recommendations for which FSI believed it was entitled to additional payment under the Agreement.  FSI made a demand to CPAL for payment on June 19, 2006, and CPAL refused on July 27, 2006, responding that the recommendations at issue were developed internally by CPAL staff and did not originate with FSI.  FSI filed the Complaint on April 9, 2007.

CPAL now claims that because the parties never agreed upon CPAL's projected net cost savings arising out of FSI's recommendations, no further payments were due and the Agreement was completed by August 16, 2000, which CPAL asserts was the last time FSI communicated with CPAL about the Agreement until June 19, 2006.  CPAL argues that FSI's claims accrued on August 16, 2000, and all of FSI's claims are thus time-barred.   FSI counters that (1) neither FSI nor CPAL terminated or abandoned the Agreement, so the date the statute of limitations began to run is a question of fact; and (2)

-3-

CPAL's commission of wrongful acts warrants equitable tolling of the relevant statutes of limitations.

## II.  **DISCUSSION**

### A.   LEGAL STANDARD

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." Samuels v. Mockry, 77 F.3d 34, 35 (2d Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986). The moving party bears the burden of proving that no genuine issue of material fact exists or that, due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. See Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994).

### B.   STATUTE OF LIMITATIONS

Under New York law, the statute of limitations for a breach of contract claim is six years. See N.Y. C.P.L.R. § 213(2). "A cause of action for breach of contract ordinarily

-4-

accrues and the limitations period begins to run upon breach." Guilbert v. Gardner, 480 F.3d 140, 149 (2d Cir. 2007) (citing Ely-Cruikshank Co. v. Bank of Montreal, 615 N.E.2d 985, 986 (N.Y. 1993)). However, "[w]here a contract does not specify a date or time for performance, New York law implies a reasonable time period." Id. (citing Schmidt v. McKay, 555 F.2d 30, 35 (2d Cir. 1977); Lituchy v. Guinan Lithographic Co., 400 N.Y.S.2d 158, 159 (App. Div. 2d Dep't 1977)).

Similarly, claims for breach of the covenant of good faith and fair dealing and for unjust enrichment are also subject to a six-year statute of limitations. See, e.g., Resnick v. Resnick, 722 F. Supp. 27, 38 (S.D.N.Y. 1989) (breach of the covenant of good faith and fair dealing); Golden Pac. Bancorp v. FDIC, 273 F.3d 509, 518 (2d Cir. 2001) (unjust enrichment).

Finally, under New York law, the statute of limitations for a claim for misappropriation of trade secrets is three years. See Architectronics, Inc. v. Control Sys., Inc., 935 F. Supp. 425, 432 (S.D.N.Y. 1996) (citing N.Y. C.P.L.R. § 213(4)). "The date upon which a cause of action for misappropriation of trade secrets begins to accrue depends on the nature of the misappropriation alleged." Gurvey v. Cowan, Liebowitz & Latman, PC., No. 06 Civ. 1202, 2009 WL 1117278, at *2 (S.D.N.Y. Apr. 24, 2009). "If a defendant misappropriates

-5-

and discloses a trade secret, he becomes liable to plaintiff upon disclosure. On the other hand, if the defendant keeps the secret confidential, yet makes use of it to his own commercial advantage, each successive use constitutes a new, actionable tort for the purpose of the running of the Statute of Limitations." Id. (quoting Architectronics, 935 F. Supp. at 433).

## C.  EQUITABLE TOLLING

Much of the parties' submissions to the Court focus on whether FSI filed the Complaint prior to the expiration of the statute of limitations -- an inquiry that depends upon the date that FSI's claims accrued. The Court need not wade into CPAL's and FSI's arguments regarding when that date occurred; even assuming without deciding that FSI's filing was untimely,[3] there are multiple issues of disputed fact as to

---

[3] The Court notes, however, that the timeliness arguments are not necessarily well-suited for summary judgment. For example, because the Agreement does not specify a time by which the parties must agree upon the projected net cost savings attributable to FSI's recommendations, a claim for unreasonably withholding agreement would accrue upon the expiration of a "reasonable time period." Ely-Cruikshank, 615 N.E.2d at 986. However, "the determination of what is a reasonable time is usually a question of fact." Wexselblatt v. Bank of Boston Int'l, 666 F. Supp. 513, 516 (S.D.N.Y. 1987) (quoting Southard v. Alford, 374 N.Y.S.2d 832, 834 (App. Div. 3d Dep't 1975)). In addition, if CPAL's obligations under the Agreement continued beyond August 16, 2000 because the Agreement was not terminated or abandoned, then CPAL's breach arguably occurred upon CPAL's first use of the recommendations without payment, the determination of which is yet another question of fact. As to the trade secret misappropriation claim, "each successive use constitutes a new, actionable tort for the purpose of the running of the Statute of Limitations," Architectronics, 935 F. Supp. at 433, and the dates of CPAL's alleged uses of FSI's trade secrets are questions of fact.

whether the statute of limitations should be equitably tolled.
CPAL's motion for summary judgment must therefore be denied.

The doctrine of equitable tolling is reserved for "'rare
and exceptional circumstance[s],'" Zerilli-Edelglass v. New
York City Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003)
(alteration in original) (quoting Smith v. McGinnis, 208 F.3d
13, 17 (2d Cir. 2000)), where "a party is 'prevented in some
extraordinary way from exercising his rights.'" Id. (quoting
Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996)).

A litigant seeking equitable tolling "bears the burden of
establishing two elements: (1) that he has been pursuing his
rights diligently, and (2) that some extraordinary
circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S.
408, 418 (2005) (citing Irwin v. Department of Veterans
Affairs, 498 U.S. 89, 96 (1990)); see also Smith, 208 F.3d at
17. "Equitable tolling is generally considered appropriate in
situations where the complainant ... has been induced or
tricked by his adversary's misconduct into allowing the filing
deadline to pass.'" Jacobsen v. The Stop & Shop Supermarket
Co., No. 02 Civ. 5915, 2004 WL 1918795, at *3 (S.D.N.Y. Aug.
27, 2004) (quoting Irwin, 498 U.S. at 96). In other words,
equitable tolling "can overcome a statute of limitations
defense if the 'plaintiff was induced by fraud,
misrepresentations or deception to refrain from filing a

-7-

timely action.'" <u>Sanders  v.  New  York  City  Dep't  of Corrections</u>, No. 07 Civ. 3390, 2009 WL 222161, at *4 (S.D.N.Y. Jan. 30, 2009) (<u>quoting</u> <u>Abbas v. Dixon</u>, 480 F.3d 636, 642 (2d Cir. 2007)).

In the Complaint, FSI alleges that after it presented its recommendations to CPAL, CPAL delayed the negotiations through which the parties were to agree upon the projected net cost savings of the recommendations.  FSI further alleges that, "through its concealment and subsequent wrongful conduct," CPAL "feigned  a  disinterest  in  fuel  conservation"  and purported to reject recommendations that CPAL nonetheless later adopted. (Complaint ¶ 34.) FSI thus alleges that "CPAL purposefully concealed for a period, and for its own wrongful enrichment, the extent to which it had implemented or was going to implement the [FSI] strategies, in order to prevent [FSI] from knowing the extent to which its strategies were going to be used (or in fact were being used) and it was only by happenstance," beginning with the May 17, 2006 press release, "that the truth began to emerge."  (<u>Id.</u> ¶ 35.)

As one example, FSI contends that it recommended that CPAL reduce the paint on its aircraft in favor of a more polished aircraft design, which FSI projected could save CPAL millions of dollars in weight reduction. On March 5, 1998, CPAL acknowledged to FSI that reducing or eliminating paint

-8-

would reduce aircraft weight and thus fuel consumption, but
rejected the strategy as unacceptable to management from a
product and marketing point of view.  In the May 17, 2006
press release, however, CPAL stated that it was adopting a
"polished fuselage" as a weight reduction strategy, and that
the idea had been generated internally by CPAL staff.  (Id. ¶
36.)  Upon discovering that CPAL adopted this measure, FSI
made a demand for compensation based on a percentage of the
fuel savings benefit, as provided in the Agreement, but CPAL
rejected the request because it did not see any connection
between FSI's recommendations and its own efforts.

FSI has submitted to the Court documents that it asserts
demonstrate that "CPAL continued to review a number of FSI's
recommendations" from 2000-2006, (SMF Opp. ¶ 85), accompanied
by examples of recommendations FSI gave to CPAL that CPAL
ultimately adopted, (see, e.g., id. ¶¶ 93-103).  CPAL also
conceded    in    a    deposition    that    it    reviewed    FSI's
recommendations before receiving the internal staff suggestion
to reduce paint.  (See id. ¶ 95.)  FSI concludes that "[i]t
would be particularly inequitable to apply the statute of
limitations where, as here, once learning of CPA's duplicity
(in May 2006, within the statute of limitations) and after
CPAL falsely represented to FSI that its implementation of
paint versus polish ... had nothing to do with FSI's

-9-

recommendations, FSI discovers that CPAL had consulted and utilized FSI's recommendations within the applicable statute of limitations period." (FSI Opp. at 6.)

The Court is persuaded that genuine issues of disputed fact exist as to multiple issues, including whether: (1) CPAL feigned disinterest in FSI's recommendations; (2) CPAL intentionally and wrongfully delayed agreement upon the projected net cost savings attributable to FSI's recommendations; (3) CPAL used FSI's recommendations that would have entitled FSI to demand additional payment pursuant to the Agreement; (4) CPAL concealed that it relied upon and used FSI's recommendations; (5) as a result of CPAL's concealment, FSI could not have reasonably known about CPAL's use of its recommendations until the May 17, 2006 press release; (6) after May 17, 2006, while the statute of limitations period was still active, FSI made deliberately false statements intended to mislead and deceive FSI as to its reliance upon FSI's recommendations; and (7) FSI's diligence in pursuing its claims once CPAL's allegedly wrongful acts were discovered.

Under these circumstances, and drawing all inferences in FSI's favor, CPAL fails to carry its burden of showing that no rational juror could find that (1) FSI pursued its rights diligently since first becoming aware of CPAL's use of its

-10-

recommendations, demanding payment within one month and filing this action in less than one year; or (2) "extraordinary circumstances" prevented FSI from filing earlier. <u>Pace,</u> 544 U.S. at 418. At a minimum, disputed, material facts exist as to whether FSI "was induced by fraud, misrepresentations or deception to refrain from filing a timely action." <u>Abbas,</u> 480 F.3d at 642; <u>see also Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc.,</u> 157 F.3d 933, 942-43 (2d Cir. 1998) (reversing district court's grant of summary judgment, holding that "[w]ith both [defendant's] deliberate concealment of the facts necessary to support the claim and [plaintiff's] diligence in pursuing it once discovered thus in genuine issue, the district court erred in deciding the equitable estoppel issue against [plaintiff] as a matter of law").

CPAL argues that the equitable tolling doctrine does not apply here because the parties' exchanges regarding the projected net cost savings all occurred before August 16, 2000, and FSI thus failed to act with reasonable diligence to preserve its rights for six years. However, even if FSI's claims accrued on August 16, 2000 (which, again, is a question of fact), if CPAL, by fraud, misrepresentations, or deception, concealed its use of FSI's recommendations during the statute of limitations period, and if FSI could not have reasonably known about such use, then it may be appropriate to toll the

-11-

statute of limitations. The determination of these factual predicates must be left to a jury.

CPAL further asserts that FSI had three months to file its action within the statute of limitations period after the issuance of the press release in May 2006 and thus FSI was not induced into allowing the filing deadline to pass. However, after becoming aware of the press release, FSI made its first demand for payment on June 19, 2006, to which CPAL did not respond until July 27, 2006. (See SMF Opp. ¶¶ 106, 107). In addition, as discussed above, the parties sharply dispute when FSI's claims accrued in the first place -- more facts for the jury to determine. Under these circumstances, particularly given the dispute as to the proper accrual date, CPAL has not sufficiently established that no rational juror could conclude that FSI acted diligently in filing the Complaint. See Independent Order of Foresters, 157 F.3d at 943 (finding plaintiff's due diligence in filing to be an issue of fact precluding summary judgment against equitable tolling).

To be clear, the Court is not determining at this point whether FSI has established that it is entitled to equitable tolling of the relevant statutes of limitations. However, there is no doubt that multiple issues of disputed fact exist as to resolving this issue, and on this basis, CPAL's motion for summary judgment must be denied.

-12-

On a final point, the Court notes that its ruling should come as no surprise to CPAL. When CPAL first notified the Court of its interest in moving for summary judgment, the Court gave the parties an opportunity to set forth their arguments in letter form. At a pre-motion conference on January 30, 2009, and again during a telephone conference on February 18, the Court, having reviewed the parties' contentions in the light of the record then available, offered its preliminary assessment that this litigation seemed replete with factual disputes, and expressed strong skepticism about the likelihood that a motion for summary judgment, even limited to the issue of the statute of limitations, would prevail. Magistrate Judge Frank Maas, who supervised pretrial proceedings, expressed similar reservations, at a conference before him as early as October 10, 2007, about the appropriateness of this case for disposition by summary judgment. This Court endeavored repeatedly to discourage unnecessary motion practice, cautioning of the effect of such a course in prolonging the resolution of the merits and extending the costs of litigation. Nonetheless, CPAL chose to proceed with a motion that, even narrowed to one issue as guided by the Court, produced massive submissions bordering on legal excess.

-13-

The needless time delays and ensuing costs incurred, both by the parties and by the Court, raise substantial concerns implicating the fair and efficient administration of justice. Of equal moment is that the expenditure of these resources could have been avoided given that CPAL's motion produced nothing more than glaring factual disputes the Court had suggested would surface, as well as legal theories and arguments that the Court had already heard during the pre-motion discussions and that it had strongly signaled were unlikely to succeed.   Under these circumstances, it is the Court's view that some form of sanction, such as imposing a fixed monetary penalty or placing the costs of this motion on CPAL and/or its counsel, may be warranted.   The Court will thus direct CPAL to show cause why the Court should not so order.   See Sassower v. Field, 973 F.2d 75, 80-81 (2d Cir. 1992); see also Williams v. White Castle Sys. Inc., 526 F. Supp. 2d 830, 834 (M.D. Tenn. 2007) (accepting magistrate judge's award of sanctions based, in part, on futility of proceeding with filed motions despite repeated requests for their withdrawal).

-14-

### III.  ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 38) of defendant Cathay Pacific Airways Limited ("CPAL") for summary judgment is DENIED; and it is further

**ORDERED** that CPAL is directed to show cause why the Court should not impose sanctions against CPAL and/or its counsel in connection with the denial of this motion under the circumstances described in the Court's decision.

The parties are directed to appear at a final pretrial conference on September 17, 2009 at 11:45 a.m. to schedule a date for trial and related preparations.

**SO ORDERED.**

Dated:     New York, New York
           18 August 2009

VICTOR MARRERO
U.S.D.J.

-15-